William CLARK, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (WONDER BREAD COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 24, 1997.

Decided Dec. 11, 1997.

Michael V. Puppio, Jr., Media, for petitioner.

Pamela A. Santoro, Philadelphia, for respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented on appeal is whether the Workers' Compensation Appeal Board (Board) erred by finding that the Workers' Compensation Judge (WCJ) did not exceed the scope of the Board's remand order where the WCJ reversed his prior finding that William Clark (Claimant), a bread deliveryman, suffered from occupational asthma related to his exposure to grain dust.

Claimant appeals from an order of the Board that affirmed the WCJ's decision denying benefits under the Workers' Compensation Act (Act).[1] We reverse and remand.

On October 29, 1992,[2] Claimant filed a claim petition alleging that he suffered from chronic bronchial asthma, permanent lung damage, migraine headaches, blackouts, pneumonia, irregular heartbeat, and high blood pressure as a result of his employment as a bread deliveryman with Wonder Bread

Company (Employer). Claimant listed July 14, 1992 as the date of his last exposure and September 22, 1992 as the date on which he gave notice of the injury to Employer.[3] On December 30, 1992, Employer filed an answer denying Claimant's allegations.

At a hearing before the WCJ, Claimant testified that he worked for Employer as a bread deliveryman from 1989 through July 14, 1992. As a deliveryman, Claimant testified that he was constantly exposed to black soot and yeast dust that permeated his delivery truck. Claimant further testified that his exposure to the soot and dust at work caused him to have difficulty breathing upon physical exertion, coughing spells, and bronchial asthma. Finally, Claimant testified that after leaving work on July 14, 1992, he had a blackout that caused him to have an accident. As a result, Claimant called work on July 15, 1992 and told a supervisor that he was unable to work because his doctor did not want him to drive.

Claimant also presented the deposition testimony of his treating physician, Barry Hertz, M.D. (Dr. Hertz). Dr. Hertz testified that Claimant was diagnosed with asthma in July of 1990. Claimant was hospitalized for treatment of his asthma on November 30, 1990. Dr. Hertz testified that at that time he advised Claimant that Claimant's asthma was related to his work environment. Dr. Hertz further testified that Claimant's condition had stabilized since Claimant stopped working in July of 1992. Based on his treatment of Claimant, Dr. Hertz concluded that Claimant suffered from occupational asthma related to grain dust and that Claimant should not return to work as a bread deliveryman with Employer.

In opposition, Employer presented the deposition testimony of Theodore Rodman, M.D. (Dr. Rodman). Dr. Rodman examined

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

**2.** Although the WCJ's Finding of Fact No. 7 in his decision on remand indicates "December, 1992" as the date Claimant filed his claim petition, we recognize that the WCJ's original decision and the record both show that Claimant's claim petition was filed on October 29, 1992.

**3.** In his brief, Claimant asserts that he sent notice of his injury to Employer by certified letter on or about September 22, 1992. However, we note that the letter is not in the record and the WCJ did not make such a finding.

Claimant on November 11, 1993 and ordered a battery of pulmonary function tests. Based on the examination, the pulmonary tests, a chest x-ray, and an electrocardiogram, Dr. Rodman concluded that Claimant suffered from "garden variety" atopic asthma rather than occupational asthma. Dr. Rodman also testified that Claimant should return to work as a deliveryman for Employer. If Claimant's symptoms recurred, Dr. Rodman suggested that a standard and widely recognized four step test for occupational asthma be administered. Dr. Rodman noted that such a test was not administered by Dr. Hertz in evaluating Claimant's condition.

On January 26, 1995, the WCJ issued a decision granting compensation benefits. In support of his decision, the WCJ specifically found that the testimony of Claimant and Dr. Hertz was credible and that Claimant met his burden of proving that he suffers from occupational asthma. The WCJ also found credible Dr. Rodman's testimony that Claimant suffers from asthma and that Claimant's asthma could possibly be occupational in nature. The WCJ then found that further testing, as suggested by Dr. Rodman, was necessary to determine whether Claimant suffers from occupational asthma. Despite Dr. Rodman's suggestions, the WCJ found that Claimant suffers from occupational asthma and could not return to work.

Both parties appealed. On appeal before the Board, the parties entered into a stipulation in which they requested a remand to the WCJ so that he could make necessary findings to resolve the following issues: notice, average weekly wage, rate of compensation, medical expenses, date of compensation, and litigation costs. Based on the stipulation, the Board remanded to the WCJ. On remand, Claimant submitted a Notice of Workers' Compensation Denial dated September 30, 1992, Claimant's litigation expenses, and a Statement of Wages. Employer presented no evidence.

After a review of the parties' proposed findings of fact and conclusions of law, the WCJ dismissed Claimant's claim petition. Specifically, the WCJ found credible only a portion of the testimony of Claimant and Dr. Hertz but found all of Dr. Rodman's testimony credible. The WCJ found that Claimant left his job with Employer because of his black-out and that Claimant failed to prove that the black-out was caused by occupational substance exposure. The WCJ also found that Dr. Hertz failed to perform the proper tests to detect occupational asthma. As a result, the WCJ agreed with Dr. Rodman that Claimant suffered from atopic asthma, which was neither caused nor aggravated by his work environment. Finally, the WCJ found that even if Claimant's asthma was work-related, Claimant failed to give Employer timely notice of his injury. Claimant appealed. By order dated May 30, 1997, the Board affirmed. The instant appeal followed.[4]

Claimant argues that the WCJ's decision on remand should have been reversed by the Board because it went beyond the scope of the Board's remand order and reopened issues previously determined by the WCJ in his original decision. However, Employer contends that the Board remanded to the WCJ with directions to address the issue of notice. To address the issue of notice, Employer argues that the WCJ needed to review the testimony of Claimant, Dr. Hertz, and Dr. Rodman in order to ascertain the type of injury involved. Once the WCJ determined that Claimant did not suffer from occupational asthma, Employer contends that the WCJ properly concluded that Claimant did not provide timely notice of his injury.[5] In fur-

4. Our scope of review of an administrative agency's decision is to determine whether there has been a constitutional violation or an error of law and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

5. In cases that do not involve an occupational disease, the 120–day statutory period under Section 311 of the Act begins to run "when the injured employee knows, or reasonably should know, of the nature of his injury and its relationship to his employment, regardless of whether the injured employee is disabled by the injury." *Leber v. Workmen's Compensation Appeal Board*, 156 Pa.Cmwlth. 491, 628 A.2d 481, 484 (1993) (citation omitted). The WCJ determined that Claimant knew of his injury in November, 1990 but failed to notify Employer of his injury until he filed his claim petition in 1992. Thus, the WCJ found that notice was untimely.

ther support of its position, Employer argues that the stipulation, as incorporated in the Board's remand order, directed the WCJ to make factual findings "in order to resolve all the issues in the case."

We disagree with Employer that the Board's remand order required the WCJ to reexamine the evidence to ascertain the type of injury involved. Our review of the WCJ's first decision shows that the type of injury and causation were already decided by the WCJ. Specifically, the WCJ found that Claimant suffered from occupational asthma related to his constant exposure to grain dust as a bread deliveryman. Moreover, the WCJ found that the testimony of Claimant and Dr. Hertz was credible. Although the WCJ also found credible Dr. Rodman's testimony that proper testing was not performed by Dr. Hertz, the WCJ still found that Claimant met his burden of proof. Thus, any issues as to the type of injury and causation were settled by the WCJ's first decision.

 A WCJ should restrict remand proceedings to the purpose indicated by the Board's remand order; to allow him to do otherwise will result in unnecessary confusion. *Glabern Corporation v. Workmen's Compensation Appeal Board (Moccia)*, 84 Pa.Cmwlth. 381, 479 A.2d 77, 80 (1984). Because the power of the Board is preeminent in workers' compensation proceedings, the WCJ must confine the proceedings on remand solely to the issues specified in the Board's remand order. *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 97 n. 2, 460 A.2d 237, 239 n. 2 (1983) (plurality opinion). In the case *sub judice*, the Board's remand order clearly directed the WCJ to address the issues of notice, average weekly wage, rate of compensation, medical expenses, date of compensation, and litigation costs. The Board's order did not authorize the WCJ to reconsider whether Claimant suffered from occupational asthma.[6]

Therefore, we hold that the WCJ improperly exceeded the scope of the Board's remand order.

The WCJ was instructed on remand to address the issue of notice. Because the WCJ previously found that Claimant suffered from an occupational disease, the WCJ should have reviewed prior evidence and any additional evidence to determine whether Claimant gave notice to Employer within 120 days of the time that he first knew, or in the exercise of due diligence should have known, that he was disabled due to a work-related occupational disease. *Gaff v. Workmen's Compensation Appeal Board (Babcock and Wilcox)*, 140 Pa.Cmwlth. 330, 592 A.2d 827 (1991). To determine the notice issue, the WCJ only needed to review the relevant dates as presented by the evidence.

On remand, the WCJ found that Claimant discovered the cause of his asthma in November, 1990, but Claimant failed to tell Employer anything other than the fact that his doctor did not want him to drive until Claimant filed his claim petition on October 29, 1992. Moreover, Claimant points out that Employer issued a denial of compensation dated September 30, 1992, which indicates that Employer received notice well-before the filing of the claim petition. Finally, Claimant's claim petition indicated that Employer was provided notice via certified letter on September 22, 1992. However, the accuracy and relevancy of these dates are matters for the WCJ as the finder of fact to determine on remand, and it is Claimant's burden to show that notice was timely. Accordingly, we reverse the Board's order affirming the decision of the WCJ and remand to the Board for resubmission to the WCJ for the purpose of determining the issues originally included in the Board's remand order.

---

**6.** Under Section 423 of the Act, Employer had twenty (20) days after receiving notice of the WCJ's award of benefits to appeal to the Board. 77 P.S. § 853. Although both parties filed timely appeals from the WCJ's first decision, the issues raised by Employer on remand were not included in the parties' stipulation before the Board or in the Board's remand order. The mere filing of an appeal does not preserve issues that are not specifically raised. *Fiorentino v. Workmen's Compensation Appeal Board (Concrete Industries)*, 131 Pa.Cmwlth. 658, 571 A.2d 554 (1990). Thus, Employer was not even permitted on remand to relitigate issues related to the type of injury or causation because Employer failed to raise such issues on appeal before the Board.

## ORDER

AND NOW, this 11th day of December, 1997, the May 30, 1997 order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed, and this matter is remanded to the Board for resubmission to the Workers' Compensation Judge for the purpose of determining, in a manner consistent with this opinion, the following issues: notice, average weekly wage, rate of compensation, medical expenses, date of compensation, and litigation costs.

Jurisdiction relinquished.

LEADBETTER, J., did not participate in the decision in this case.